IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUNSTAR, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01 C 736 |
| | ) | |
| ALBERTO-CULVER COMPANY, | ) | Judge Ronald A. Guzmán |
| INC. and BANK ONE CORPORATION | ) | |
| f/k/a FIRST NATIONAL BANK OF | ) | |
| CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| ALBERTO-CULVER COMPANY, a | ) | |
| Delaware Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01 C 5825 |
| | ) | |
| SUNSTAR, INC., a Japanese | ) | Judge Ronald A. Guzmán |
| Corporation, SUNSTAR GROUP | ) | |
| COMPANY (f/k/a Alberto-Sunstar Co., | ) | |
| Ltd.), a Japanese Corporation, KANEDA, | ) | |
| KASAN, KABUSHIKI KAISHA, a | ) | |
| Japanese Corporation, and BANK ONE, | ) | |
| NATIONAL ASSOCIATION, as Trustee | ) | |
| under Trust Agreement No. 22-81196, | ) | |
| dated February 27, 1980, a National | ) | |
| Banking Association, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

These related cases arise from a dispute between Sunstar, Alberto-Culver Company ("Alberto") and Bank One ("the Bank") over Sunstar's use of a modified trademark ("1999 mark") in Japan. The case is before the Court for rulings on: (1) the parties' objections to Magistrate Judge

Nolan's August 22, 2006 Report and Recommendation on the admissibility of the exhibits and deposition testimony the parties' seek to introduce at trial ("Order"); (2) the motions of Alberto and the Bank to bar Sunstar from presenting the testimony of Dorothy Spencer, or any other the witness from Desgrippes, Gobe & Associates ("DGA"), and related exhibits; and (3) Sunstar's motion to declare that Alberto may not proceed at the trial with any claim against Sunstar for damages. For the reasons set forth below, the Court sets aside only two of Judge Nolan's determinations: (a) that Malcolm Lloyd's deposition testimony at 68:3 to 69:4 and 73:6 to 74:17 is inadmissible hearsay; and (b) that the Bank withdrew its objection to the admissibility of John Prendiville's deposition testimony at 84:14-22 and 85:7-16. The Court: (1) adopts Judge Nolan's Order in all other respects and overrules the parties' objections to it; (2) grants the motions of Alberto and the Bank to bar Sunstar from presenting testimony from Spencer, or other DGA witnesses, and related exhibits; and (3) denies Sunstar's motion to declare that Alberto may not proceed at the trial with any claim against Sunstar for damages.

## Discussion[1]

### Alberto's Objections to the Order

We will modify or set the Order aside only if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Among other things, Judge Nolan determined that Sunstar could introduce the following deposition testimony and exhibits to rebut Alberto's claim that Sunstar's use of the 1999 mark might lessen the value of the licensed marks: (1) Bernick deposition at 36:17 to 37:14, 39:9 to 39:19, 86:10 to 86:19, 89:2 to 89:19, 89:20 to 93:7, 93:9 to 93:13, 94:4 to 94:12, 106:1 to 107:2,

---

[1] The facts of the case have previously been described in opinions by Judge Lindberg, Magistrate Judge Nolan and this Court and will not be repeated here.

2

107:16 to 107:24, 108:12 to 109:1, 109:3 to 109:5, 115:14 to 116:11, 151:9 to 151:23, 152:1 to 152:22, 154:13 to 154:21, 155:21 to 156:3, 156:10 to 156:24, 158:6 to 158:9, 189:23 to 191:9, 299:15 to 299:19, 326:20 to 326:22 and 326:24; (2) Lavin deposition at 77:22 to 79:9, 79:12 to 79:16, 79:22 to 80:2; (3) Lloyd deposition at 127:2 to 128:22, 135:4 to 138:6; (4) Shakeshaft deposition at 41:13 to 41:20, 42:23 to 43:13, 43:16 to 44:25, 45:12 to 45:21, 55:17 to 56:8, 56:13; (5) Schmidt deposition at 108:1 to 108:11, 108:17 to 111:23, 112:3 to 113:2, 113:6 to 113:13, 113:17 to 114:11; (6) Prendiville deposition at 39:17 to 40:10, 94:3 to 94:7; and (7) Sunstar exhibits 11, 12, 30, 46, 50, 54, 55, 82 and 84-89. In general, this evidence suggests that Alberto uses, or permits its licensees to use, logos that deviate from the licensed marks in markets outside of Japan; Alberto has registered marks that deviate from the licensed marks in various countries; Alberto takes various steps, including changing its logo and product packaging, to strengthen its sales and trademarks; and Alberto did not formally measure the value of its marks in Japan. Alberto says the evidence is irrelevant because: trademark owners, unlike licensees, are free to modify or abandon their marks; Alberto's activities outside of Japan shed no light on Sunstar's rights under the license; and the steps Alberto takes to enhance its sales and trademarks have no bearing on whether Sunstar's use of the 1999 mark was likely to lessen the value of the licensed marks. Alberto also contends that the evidence is prejudicial because it would lead the jury to equate license rights with ownership rights or believe that Alberto had a duty to measure the licensed marks' value in Japan.

Magistrate Judge Nolan properly rejected Alberto's arguments. Alberto claims that Sunstar's use of the 1999 mark breached the license agreement because it was likely to lessen the value of the licensed marks. Evidence that Alberto registered, used, or acquiesced in the use of, non-conforming marks in other countries, intentionally changed the marks to increase sales, and believes that its trademarks are strengthened by increased sales is directly relevant to that claim. Moreover, any

3

potential this evidence may have to mislead can be cured by jury instructions. If the jury is instructed that both parties' actions must be measured by the terms of the license, any temptation it may have to equate license and ownership rights or impose an extra-contractual duty on Alberto will be eliminated.

Alberto also contends that Judge Nolan should have sustained its objections to evidence regarding: (1) the pre-1999 recommendations made to Sunstar by the designers of the 1999 mark; (2) Sunstar's pre-1999 market research as to the attitudes of Japanese consumers toward the licensed marks; (3) the presentation Sunstar made to Alberto before 1999 in an effort to obtain Alberto's consent for the mark modification; and (4) historical data on the sales of VO5 products in Japan. Specifically, Alberto says that the Spencer deposition, the Bernick deposition at 826:10-19, 115:14 to 24, 116:1-11, the Lloyd deposition at 127:2 to 128:22, and Sunstar exhibits 15, 18, 22, 36-42, 74 and 84-89 should be excluded because their admission violates the Court's motion in limine rulings and the evidence is irrelevant.

Once again, the Court agrees with Judge Nolan. The motion in limine rulings to which Alberto refers bar Sunstar from introducing evidence of the intent underlying its decision to use the 1999 mark. Such evidence sheds no light on the parties' dispute, the Court ruled, because the license prohibits Sunstar from infringing Alberto's marks or taking action likely to lessen their value, regardless of Sunstar's motivation for doing so. Thus, Sunstar cannot, for example, introduce evidence that VO5 sales in Japan were poor in the late 1990s to show that it had sound business reasons for adopting the 1999 mark.

That does not mean, however, that such evidence is inadmissible for all purposes. Data on VO5 sales in Japan before 1999, the reactions of Japanese consumers to the licensed marks, and the recommendations made by the designer of the 1999 mark are all relevant to the "lessening-of-value"

4

issue. Further, any risk that the jury will consider the evidence for other purposes can be vitiated by limiting instructions. Thus, the Court will not disturb Magistrate Judge Nolan's determination that this evidence is not barred by the Court's previous ruling and is relevant to the parties' claims.

Alberto also says the Magistrate Judge should have granted its request for judicial notice of the word "may," which appears in the license provision Sunstar is alleged to have breached: "Licensee shall not at any time do, or cause to be done, any act or deed which will or may infringe, impair or lessen the value or the exclusive right, title, and interest of [Alberto] in Licensed Trademarks...." (1980 License Agreement § IV.) Judge Nolan declined Alberto's request because she believed it was unnecessary no to offer evidence of such a common word. That was erroneous, Alberto says, because Federal Rule of Evidence ("Rule") 201 requires courts to take notice of adjudicative facts if a party makes the request and provides the appropriate support.

Rule 201 does, indeed, say that judicial notice is "mandatory" when a party requests it and supplies the necessary supporting information. Fed. R. Evid. 201(d). But facts subject to judicial notice are not exempt from analysis under the other rules of evidence. *See United States v. Falcon*, 957 F. Supp. 1572, 1585 (S.D. Fla. 1997) ("[W]hile the Rule ... [says] the court 'shall take judicial notice if requested by a party and supplied with the necessary information' ... , a court may refuse to take judicial notice of facts that are irrelevant to the proceeding or (in certain contexts) otherwise excludable under the Federal Rules." (quoting Rule 201(d)). As a result, courts refuse to take even "mandatory" judicial notice when the fact to be noticed is inadmissible under Rule 403. *See, e.g., Guidi v. Inter-Cont'l Hotels Corp.*, No. 95 Civ. 9006 (LAP), 2003 WL 1907904, at *1 n.1 (S.D.N.Y. Apr. 16, 2003) ("Because the evidence is excluded under Rule 403, it is not necessary to determine whether ... Rule 201 otherwise provide[s] for the admissibility of the proffered evidence."); *Cipriani v. Lycoming County Hous. Auth.*, 177 F. Supp. 2d 303, 326 (M.D. Pa. 2001) ("I . . . interpret [R]ule

5

201's mandatory language in clause (d), as with all evidence, to be subject to Rule 403. And ... even though it doesn't say that in 201 itself, 403 ... is a rule that's applicable almost across the board, and the basis for my ruling ... is 403."); *Knop v. Johnson*, 667 F. Supp. 467, 485 (W.D. Mich. 1987) ( "[J]udicial notice is an alternative means of proof that is subject, like all other offers of evidence, to rule[] 403 ...."). Magistrate Judge Nolan concluded that introducing evidence of the definition of "may" would be a pointless exercise and, thus, she excluded it under Rule 403. That is a sound decision that we will not disturb.

Next, Alberto argues that Judge Nolan wrongly excluded Malcolm Lloyd's deposition testimony at 68:3 to 69:4 and 73:6 to 74:17 as hearsay. In those passages, Lloyd testifies that sometime before the 1989 license modification was executed, he and others told Mr. Lavin, chairman of Alberto's board of directors, that Sunstar was using a mark different from those licensed to it on packages of Alberto products. Lavin's response, Lloyd testified, was that "[Sunstar] should not be doing that," a message Lavin subsequently conveyed to Sunstar "in no uncertain terms." (Lloyd Dep. at 68:15 to 69:4; *see id.* at 73:6 to 74:17.) Alberto argues that Lloyd's testimony is admissible because is not offered for the truth of the matter asserted, *i.e.,* that Sunstar was not allowed to use a modified mark, but to show Alberto's intent regarding the scope of the 1980 license agreement.

Hearsay or not, Sunstar says the evidence is inadmissible because the belief Lavin expressed about the terms of the license nearly nine years after it was signed sheds no light on Alberto's intent at the time the license agreement was executed. Judge Nolan agreed with Sunstar and recommended that the testimony be excluded.

This time, we part company with Judge Nolan. Lavin's belief that the license did not permit Sunstar to use a modified mark suggests that Alberto's interpretation of senyo-shiyoken was quite different from Sunstar's. The fact that Lavin made the comment nearly a decade after the license was

6

executed may diminish its impact but does not vitiate its relevance. Accordingly, the Court agrees with Alberto that this testimony is admissible.

Alberto's last objection to Judge Nolan's Order concerns Sunstar's exhibit 22. That exhibit is a memorandum prepared by an Alberto employee recounting a meeting between Sunstar and Alberto after Sunstar started using the 1999 mark. Among other things, the memorandum says that Alberto "[s]tressed [to Sunstar] our objectives [sic] how to get back trade mark that we consider core" and that "[o]bjective (without time) is to get trademark (VO5) back to our company." (Sunstar Ex. 22 at ALB000446, 453.) Sunstar says those statements are admissible because they suggest that Alberto's "lessening-the-value" rhetoric is simply a pretext for it to reclaim the licensed marks. Judge Nolan agreed.

Alberto says that conclusion is erroneous because the timing of the statements (they were made after Sunstar started using the 1999 mark) makes them irrelevant. This is precisely the argument that Sunstar made, and this Court rejected, with respect to Lavin's alleged comment. The fact that these comments were made after Sunstar introduced the 1999 mark may make them less compelling, but it does not render them irrelevant. Judge Nolan properly concluded that Sunstar exhibit 22 is admissible.

### Bank One's Objections[2]

The Bank first contends that evidence concerning Alberto's actions with respect to its trademarks in places other than Japan – the Lavin deposition at 79:4-9, the Lloyd deposition at

---

[2] The Bank objects to much of the same evidence and on the same grounds as Alberto. Because those objections are addressed in the previous section, in this section the Court will address only the objections that are unique to the Bank.

7

144:13 to 145:8, 146:19 to 147:6, 148:6 to 151:8, the Schmidt deposition at 104:14-19, 107:1 to 108:17, and the Shakeshaft deposition at 41:21 to 42:20 and 44:15-24 – are irrelevant. The Bank says this evidence, which generally shows that Alberto uses, or accepts the use of, a variety of nonconforming VO5 marks, has no bearing on whether Sunstar's use of the 1999 mark breached the license. Judge Nolan disagreed, and so do we. Evidence that Alberto tolerates variations in the VO5 mark in places other than Japan tends to refute its claim that it thought Sunstar's use of the 1999 mark would lessen the value of the licensed marks. Moreover, as noted above, any temptation the jury may have to equate ownership and license rights can be cured with jury instructions. As a result, we will not disturb Magistrate Judge Nolan's ruling.

The Bank also objects to the introduction of the deposition testimony at pages 84:14-22 and 85:7-16 of Bank employee John Prendiville. In these pages, Prendiville testifies that the Bank sent a letter to Sunstar in 1999 suspending its right to use the licensed marks. The Bank says this evidence is barred by the Court's motion in limine ruling that Sunstar cannot introduce evidence challenging the reasonableness of the suspension. Judge Nolan believed, incorrectly, that the Bank had withdrawn this objection. Because she did not address it, this Court will.

Sunstar admits that it is precluded by the Court's previous ruling from using this evidence to challenge the substance of the Bank's decision to suspend the license. But, it says, the evidence is admissible to show that the suspension notice was deficient in form, *i.e.*, that the notice did not contain all of the information required by suspension provision of the license agreement. In its amended complaint, however, Sunstar challenges only the substantive reasonableness of the notice, not its form. Because Sunstar did not raise this issue until the eve of trial, it is waived. The Bank's objection is, therefore, sustained.

8

Lastly, the Bank objects to Judge Nolan's failure to address its hearsay objections to Sunstar exhibit nos. 15, 36-39, 42 and 74. Exhibits 36-39 are DGA documents which, as discussed below, are excluded on other grounds. Thus, we need not address the hearsay objection.

Exhibit 42 is a slightly modified version of Sunstar exhibit 15, the presentation materials Sunstar created to try to convince Alberto to allow it to use a modified mark. The Bank did not raise a hearsay objection to exhibit 15 nor did it argue in the hearing before Judge Nolan that either exhibit 15 or exhibit 42 is inadmissible hearsay. (*See* 6/5/06 Hr'g Tr. at 352-55, 453-55.) By failing to argue these hearsay objections to the Magistrate Judge, the Bank has waived them.

The Bank similarly waived its hearsay objection to Sunstar exhibit 74, a chart of VO5 sales from 1966-2001 in Japan. During the hearing before the Magistrate Judge, the only ground for exclusion the Bank argued was lack of foundation. (*See* 6/7/06 Hr'g Tr. at 581-82.) Having failed to press its hearsay objection before Judge Nolan, the Bank cannot raise it now.

### Sunstar's Objections

Sunstar takes issue with Magistrate Judge Nolan's conclusion that its exhibit nos. 91-100, which are translations of Japanese trademark statutes and cases, are inadmissible. The Court agrees with Judge Nolan. To the extent these exhibits contain versions of the Japanese Trademark Law that went into effect after 1980, or cases that interpret them, they are irrelevant.

To the extent the exhibits pertain to the appropriate time period, their relevance is outweighed by the risk of confusion and delay they will create. Both parties have experts who will opine on the meaning of senyo-shiyoken, based in part on their knowledge of these materials. Thus, there is no need for the jurors to review the materials themselves. Moreover, if they do, this group of lay people is likely to misinterpret them. Further, because the materials are lengthy and dense, the jurors'

9

examination of them would needlessly and substantially increase their deliberation time. Finally, giving the documents to the jurors creates the risk that they will ignore the testimony introduced by the parties in favor of their own interpretations of these documents. In short, we agree with Judge Nolan that Sunstar exhibits 91-100 are inadmissible.

Sunstar's next objection concerns the deposition testimony of Dorothy Spencer. Spencer is a former employee of DGA, the firm that commissioned the research into Japanese consumer attitudes toward the licensed marks, recommended that Sunstar modernize the VO5 logo and designed the 1999 mark. As discussed above, Magistrate Judge Nolan found that Spencer's testimony is relevant. But she also said that Spencer could testify only as an expert, not a lay, witness. Sunstar contends that conclusion is wrong because Spencer was not hired for litigation and is offering opinions based on her work experience and personal involvement in the Sunstar project.

Rule 701, which sets the parameters for lay opinion testimony, provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. The Seventh Circuit has explained the difference between lay and expert opinion testimony as follows:

> Lay opinion testimony most often takes the form of a summary of first-hand sensory observations. *See Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196-1202 (3rd Cir. 1995). The opinion provides the jury with a more complete picture than would be provided by a recitation of each component fact. "Lay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001). Expert opinion, by contrast, need not be based on first-hand knowledge of the facts of the case. It brings to an appraisal of those facts a scientific, technological or other specialized knowledge that the lay person cannot be expected to possess.

10

*United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (footnote omitted). Testimony can fall on the expert side of the line, our court of appeals has said, even if the witness was not specifically retained to provide testimony:

> Expert testimony is designated as such by its reliance on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702. Occurrence witnesses, including those providing "lay opinions," cannot provide opinions based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Thus, a treating doctor (or similarly situated witness) is providing expert testimony if the testimony consists of opinions based on "scientific, technical, or other specialized knowledge" regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation. *Cf. O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 n.14 (7th Cir. 1994) (noting that treating physicians are not exempt from the requirements of Federal Rules of Evidence 702 and 703 because "we do not distinguish the treating physician from other experts when the treating physician is offering expert testimony regarding causation").

*Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 n.2 (7th Cir. 2004).

Spencer is like the treating physician discussed in *Musser*. If she testifies that DGA was hired by Sunstar and performed research on its behalf, events that any layman could also recount, she is a lay witness. But that is not the kind of testimony Sunstar seeks to present. Rather, it wants to offer Spencer's testimony about the conclusions DGA drew from the research and the recommendations it made to Sunstar as a result. Those are not subjects about which an untrained layman could opine. Thus, Spencer is an expert witness.

### Alberto & the Bank's Motion to Bar

Alberto and the Bank ask the Court to bar Sunstar from using Spencer's testimony, or that of any other DGA employee, because Sunstar did not disclose them as experts. Federal Rule of Civil Procedure 26 requires parties to disclose the identities of all expert witnesses in accordance with the Court's scheduling orders. *See* Fed. R. Civ. P. 26(a)(2); *Musser*, 356 F.3d at 756 (emphasizing that

11

"*all* witnesses who are to give expert testimony under the Federal Rules of Evidence must be disclosed under Rule 26(a)(2)(A)"). A party who fails to do so, "without substantial justification . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). Sunstar did not identify Spencer, or any other DGA witness, as an expert during the discovery period of this case. Consequently, Sunstar can introduce her testimony at trial only if there is a substantial justification for its failure to disclose or that failure is harmless.

Sunstar says it failed to disclose Spencer because it viewed her as a lay witness not an expert. Sunstar's erroneous interpretation of Rules 701 and 702, however, is not substantial justification within the meaning of Federal Rule of Civil Procedure 37. *See Musser*, 356 F.3d at 758 ("A misunderstanding of the law does not equate to a substantial justification for failing to comply with the disclosure deadline.").

The next question is whether Sunstar's failure to disclose was harmless. To make that determination, the Court must consider: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Keach v. U.S. Trust Co.*, 419 F.3d 626, 640 (7th Cir. 2005) (quotation omitted). Sunstar says these factors militate in favor of allowing Spencer's testimony to be introduced because its failure to disclose was innocent and defendants, who deposed Spencer regarding DGA's documents, her professional background and her work for Sunstar, will suffer no prejudice.

The Court disagrees. Defendants did indeed depose Spencer, but they did so assuming she was a fact witness, not an expert. They asked Spencer generally about her experience but did not conduct the in-depth examination that is required to determine whether she is qualified to provide

12

expert testimony. Defendants also did not ask Spencer whether there is an accepted methodology for evaluating brand equity and whether DGA used it on the Sunstar project, nor did they delve into the facts and rationale underlying DGA's recommendations. Had defendants known Sunstar intended to call Spencer as an expert, her deposition would have been much different.

Indeed, defendants' whole discovery plan probably would have been different if they had known Spencer would be called as an expert. They would likely have taken discovery of the firms DGA hired to perform the Japanese market research and any other DGA employees involved in the Sunstar project. They may even have hired a brand equity expert of their own. Their inability to do so constitutes prejudice for the purposes of Federal Rule of Civil Procedure 37. *See Musser*, 356 F.3d at 757-58 (stating that defendant was prejudiced by plaintiff's failure to disclose experts "because there are countermeasures that could have been taken that are not applicable to fact witnesses, such as attempting to disqualify the expert testimony on grounds set forth in *Daubert* . . . , retaining rebuttal experts, and holding additional depositions to retrieve the information not available because of the absence of a report.").

Moreover, because Spencer would testify via deposition, not in person, Alberto and the Bank could not cure this prejudice through cross-examination. The only other way the prejudice could be cured is by delaying the trial and reopening discovery, an untenable solution given the age of this case and its impending trial date.

In short, Sunstar has not shown that its failure to disclose Spencer as an expert was either substantially justified or harmless. Therefore, it may not introduce at trial her testimony, or that of any other DGA witness, or Sunstar exhibits 36-41, which depend on her testimony.

## Sunstar's Motion to Bar Alberto's Damage Evidence

Sunstar has filed a motion styled "Motion to Declare that Alberto May Not Proceed at the Trial with Any Claim Against Sunstar for Damages." To the extent Sunstar is seeking judgment with respect to damages, as the title of its motion suggests, the motion is denied. The Court will not entertain a summary judgment motion at this late date.

Sunstar fares no better if we construe the motion as one to bar Alberto from presenting any reasonable royalty evidence at trial. Sunstar says such evidence should be barred because: (1) Alberto's royalty evidence is based solely on the royalty rate in the parties' 1989 agreement, which the Court previously ruled could not be used as a basis for a royalty in this case; and (2) it is too late for Alberto to advance any other theory of damages.

The latter contention is true but immaterial. The only damage theory Alberto seeks to pursue is the one it has disclosed: a reasonable royalty.

The first contention is no more persuasive. Alberto's damages expert, Aron Levko, used the royalty rate from the 1989 agreement as a basis for his reasonable royalty calculation. Thus, as Alberto acknowledges, he cannot testify about that calculation. But Levko does more in his report than calculate the present day value of the 1989 rate. He also explains the assumptions underlying his calculations, including that: (1) Sunstar would have been willing to pay a substantial amount for a license in 1999 because it viewed the redesigned mark as crucial to its business and had already invested heavily in it; (2) Alberto would have demanded a significant royalty rate in 1999 because the company was, at that point, focused on consistency in its global brand; (3) a royalty in the form of an annual payment is appropriate; (4) to calculate the royalty rate, it is appropriate to enhance a prior royalty rate for a license of similar scope by the percentage rise in the Consumer Price Index for hair care products between the year of the benchmark and 1999; and (5) it is appropriate to

14

assume, for the purpose of calculating prejudgment interest, that Alberto would have used the royalty payments to pay down existing debt. None of this testimony is barred by the Court's order.

Moreover, Levko's report shows that, among other things, he reviewed 1999 correspondence between Sunstar's Saegusa and Radding and Alberto's Schmidt in which they discussed prices for Alberto's possible purchase of the Japanese VO5 marks. Schmidt is listed as a possible witness in the revised pre-trial order by both Alberto and the Bank. If Schmidt testifies about the prices the parties discussed in 1999, Levko could, given his expertise in valuing and licensing intellectual property, testify about the reasonableness of those prices.

In short, Levko cannot testify about the calculation he performed using the 1989 royalty rate as a benchmark or about a different calculation not disclosed in his report. But he can give testimony about the overall process of determining a reasonable royalty rate, his opinions about the parties' positions relative to a hypothetical license negotiation in 1999, and, to the extent such evidence is introduced, the reasonableness of any monetary value the parties placed on the contested marks at or before 1999. Taken together, that evidence – which may be just a portion of what is available to Alberto – is a sufficient basis for Alberto to argue its reasonable royalty claim to the jury. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (seminal case on reasonable royalty, stating that expert testimony is one of many factors that is "relevant, in general, to [determining] the amount of a reasonable royalty," not a prerequisite to doing so), *modified, Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971). Sunstar's motion to bar Alberto from presenting any reasonable royalty evidence at trial is denied.

## Conclusion

For the reasons set forth above, the parties' objections to Magistrate Judge Nolan's Order are, in all but two respects, overruled. The Court sets aside Judge Nolan's determinations that Malcolm Lloyd's deposition testimony at 68:3 to 69:4 and 73:6 to 74:17 is inadmissible hearsay, and that the Bank withdrew its objection to the admissibility of John Prendiville's deposition testimony at 84:14-22 and 85:7-16. In all other respects, the Court adopts Judge Nolan's Order. The Court grants the motions of Alberto and the Bank [doc. nos. 337 & 343] to bar Sunstar from presenting testimony from Spencer, or any other DGA witness, and related exhibits. The Court denies Sunstar's motion to bar Alberto from introducing damages evidence [doc. no. 333].

**SO ORDERED.** ENTERED: 11/16/06

HON. RONALD A. GUZMAN
**United States District Judge**