IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUNSTAR, INC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 01 C 736 |
| ALBERTO-CULVER COMPANY, INC. and BANK ONE CORPORATION f/k/a FIRST NATIONAL BANK OF CHICAGO, | ) ) ) ) ) | Judge Ronald A. Guzmán |
| Defendants. | ) ) ) | |
| ALBERTO-CULVER COMPANY, a Delaware Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 01 C 5825 |
| SUNSTAR, INC., a Japanese Corporation, SUNSTAR GROUP COMPANY (f/k/a Alberto-Sunstar Co., Ltd.), a Japanese Corporation, KANEDA, KASAN, KABUSHIKI KAISHA, a Japanese Corporation, and BANK ONE, NATIONAL ASSOCIATION, as Trustee under Trust Agreement No. 22-81196, dated February 27, 1980, a National Banking Association, | ) ) ) ) ) ) ) ) ) ) ) ) | Judge Ronald A. Guzmán |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

These related cases arise from a dispute between Sunstar, Kaneda, Kasan, Kabushiki Kaisha ("KKKK"), Alberto-Culver Company ("Alberto"), and Bank One ("the Bank") over Sunstar's use

of a modified trademark ("1999 mark") in Japan. The case is before the Court on Sunstar's Federal Rule of Civil Procedure ("Rule") 59 motion for a new trial and Rule 50(b) motion for judgment as a matter of law and Alberto's motion for equitable relief. For the reasons set forth below, Sunstar's motions are denied and Alberto's motion is granted.

## Sunstar's Rule 59 Motion

"A motion for a new trial should succeed only if the verdict is against the manifest weight of the evidence." *ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541, 545 (7th Cir. 2003) (quotation omitted). Sunstar contends that it is entitled to a new trial because the jury's verdicts are inconsistent. In Sunstar's view, the jury's verdict in favor of Alberto on the breach of contract claim is irreconcilable with its award of zero damages to Alberto.

Alberto contends that Sunstar has waived this issue by failing to raise it before the jury was discharged, a position taken by a number of federal appellate courts. *See, e.g., Oja v. Howmedica, Inc.*, 111 F.3d 782, 790 (10th Cir. 1997) ("A party's failure to object to a general jury verdict on the ground of inconsistency before the jury is discharged constitutes waiver . . . ."); *Jacobs Mfg. Co. v. Sam Brown Co.*, 19 F.3d 1259, 1266 (8th Cir. 1994) (same); *Lavoie v. Pac. Press & Shear Co.*, 975 F.2d 48, 54 (2d Cir. 1992) (same). The Seventh Circuit is not, however, one of those courts, having declined to decide whether a failure to object immediately to purportedly inconsistent general verdicts constitutes a waiver of that objection. *See Carter v. Moore*, 165 F.3d 1071, 1079-80 (7th Cir. 1998) ("While we remark in passing that the requirement of a contemporaneous objection to inconsistent general verdicts certainly serves the interests of finality and efficient use of scarce judicial resources . . . , we need not determine whether the failure to make such an objection

2

constitutes a definitive waiver." (citation and footnote omitted)). We need not decide the waiver issue, however, because, as discussed below, the verdicts are not actually inconsistent.

As the jury was instructed, to prevail on its contract claim, Alberto had to prove, among other things, that it incurred damage as a result of Sunstar's breach. (*See* Jury Instructions at 21); *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, No. 05-1371, ___ F.3d ___, 2007 WL 1704114, at *4 (7th Cir. June 14, 2007) (listing elements of contract claim under Illinois law). Alberto was not, however, required to show "the specific amount" of damages it suffered, just "that [it] did, in fact, suffer some damages." *TAS*, 2007 WL 1704114 at *4. If Sunstar established that "it [was] entitled to damages but fail[ed] to prove the amount of those damages" it would still have been entitled to recover nominal damages." *Id.* at *5; *see Chronister Oil Co. v. Unocal Refining &Mktg.*, 34 F.3d 462, 466 (7th Cir. 1994) (affirming "judgment of the district court . . . insofar as it determined that Chronister broke its contract with Unocal," but reversing it "with respect to damages and remand[ing] with directions to enter judgment for Unocal for nominal damages . . . to which . . . every victim of a breach of contract . . . is entitled" (citation omitted)); *Hentze v. Unverfehrt*, 604 N.E.2d 536, 540 (Ill. App. Ct. 1992) (plaintiff was entitled to recover nominal damages when it proved that it had lost profits but failed to prove the amount of those profits); *Brewer v. Custom Builders Corp.*, 356 N.E.2d 565, 573 (Ill. App. Ct. 1976) ("If the party having the burden of proof establishes that he is entitled to damages, yet fails to establish a proper basis from which those damages can be computed, he is entitled to . . . nominal damages.").

Alberto Culver did not, however, seek nominal damages. Rather, the only form of damages it sought was a reasonable royalty, the award of which, the jury was instructed, depended on "the

3

presence, absence [and] nature" of evidence about a variety of factors like royalty rates paid by other licensees. (*See* Jury Instructions at 39-40.)

Viewed in context, there is no tension between the jury's verdict for Alberto on the breach of contract claim and its refusal to award any damages. The jury was free to, and did, find that Alberto had been damaged by Sunstar's breach but had not offered sufficient evidence to warrant a reasonable royalty award, the only measure of damages Alberto sought. Because the jury's findings are not inconsistent, they are not a basis for granting a new trial.

Sunstar also argues that a new trial is warranted because the Court abused its discretion when it excluded expert testimony about the meaning of senyo-shiyoken. The Court did so under Federal Rule of Evidence 403 because the slight probative value of such evidence was far outweighed by the possibility of confusion and delay. (*See* Trial Tr. at 411-14.) The fact that the Court struck the wrong balance, Sunstar says, is evidenced by the jurors' request that the Court tell them "[what] exclusive rights . . . the senyo-shiyoken license . . . give[s] Sunstar." (*Id.* at 1924.)

The Court disagrees. As they were instructed, it was the jurors' task to decide what rights the parties intended their agreement to give Sunstar with respect to Alberto's trademarks (*see* Jury Instructions at 22-35), and the lay witnesses testified about their understanding of that term. The actual meaning of senyo-shiyoken under Japanese law may have had some marginal relevance to the parties' intent. But any such relevance was greatly outweighed by the risk that the jury would decide that their job was to determine the meaning of senyo-shiyoken under Japanese law rather than what the parties' intended by using the term in the agreement. Moreover, admitting testimony on that subject would have created a time-consuming battle of the experts on the topic that would have

4

unnecessarily complicated and delayed the trial. In short, the Court's refusal to admit expert testimony on the meaning of senyo-shiyoken is not grounds for a new trial.

**Sunstar's Rule 50(b) Motion**

"Judgment as a matter of law is proper only if a reasonable person could not find that the evidence supports [the decision for Alberto] on each essential element of the case, viewing the evidence in the light most favorable to [Alberto]." *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 612 (7th Cir. 2001) (quotations omitted). Sunstar contends that the record contains insufficient evidence on the likelihood of confusion element of Alberto's breach-of-contract-by-infringement claim.

As an initial matter, the parties' agreement prohibits Sunstar not only from infringing Alberto's trademarks but also from taking any action that *may* infringe the marks. (*See* Jury Instructions at 22.) Thus, evidence that there was – rather than might be – a likelihood of confusion was not essential to Alberto's case.

Second, Sunstar's motion assumes that the jury's verdict was based solely on Professor Sato's survey, a survey that Sunstar says is fatally flawed because it does not address natural confusion. *See Reed-Union Corp. v. Turtle Wax, Inc.*, 77 F.3d 909, 912 (7th Cir. 1996) (stating that surveys must account for natural confusion, *i.e.*, the level of confusion that would exist even without unfair competition).

Alberto offered the Sato survey to show that Japanese consumers were actually confused by Sunstar's use of the 1999 Mark. But Alberto was not required to prove actual confusion to prevail on its breach-by-infringement claim. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d

5

947, 960 (7th Cir. 1992). It just had to prove that consumers were likely to be confused. *Id.* Morever, viewed favorably to Alberto, the record contains ample evidence to support the jury's finding that there was a likelihood of consumer confusion, including that: the 1999 Mark is nearly identical to the licensed marks and is used on the same products (*compare* JX 1, Basic Sale Agreement, Apps. (listing licensed marks) *with* SSTX 24A-EE (photos and catalog pages of Sunstar products)); the VO5 mark has considerable strength in Japan (Trial Tr. at 1224 (testimony of Professor Sato that "VO5 brand is a well-known brand in Japan")); Sunstar's VO5 hair products are relatively inexpensive, suggesting that consumers do not exercise great care when buying them (*id.* at 442-44 (testimony of Mr. Makiyama that Sunstar's VO5 hair spray and shampoo cost less than $10.00)); Sunstar marketed products bearing the 1999 Mark in the same manner and in the same area as products bearing the licensed marks (*see* SSTX 75A-M); and Sunstar intended consumers to believe that products bearing the 1999 Mark were licensed VO5 products (*see* JX 6, Letter to Prendiville from H. Kaneda of 5/11/99 (stating that the 1999 mark "creates the same commercial impression overall" as the licensed marks)). Because the evidence offered by Alberto is sufficient to support the jury's verdict even without the Sato survey, Sunstar's motion for judgment notwithstanding the verdict is denied.

### Alberto's Motion for Equitable Relief

Alberto asks the Court to enter orders: (1) terminating the trust that holds the contested trademarks; (2) requiring the Trustee to assign all right, title and interest in and to the trademarks to Alberto; (3) requiring Sunstar and KKKK to take whatever action is necessary to cancel any records

reflecting that they have permission to use Alberto's trademarks; and (4) enjoining Sunstar and KKKK from using Alberto's trademarks. The Court will address each request in turn.

Alberto contends that the trust must be terminated because the jury's verdict establishes that the trust's purposes can no longer be carried out. "It is one of the elemental principles of the law of trusts that a trust should be terminated when the accomplishment of its purpose becomes impossible." *Harris Trust & Sav. Bank v. Wanner*, 61 N.E.2d 860, 873 (Ill. App. Ct. 1945); *see* Restatement (Third) of Trusts, § 30 cmt. a ("If all of the purposes for which a private trust is created are or become impossible of accomplishment, the trust will be terminated."); 35 Illinois Law & Practice Trusts § 25 ("In a proper case, a court, exercising its equity power, may terminate an express trust.").

The trust agreement in this case says that its purpose is "to secure the performance and observance of certain undertakings and covenants made by the parties" in the trust agreement, the basic sale agreement, the trademark assignments from Alberto to Sunstar and from Sunstar to the Bank, and the license agreement. (JX 2, Trust Agreement, Preamble at 1, 3; JX 1 Basic Sale Agreement, Preamble at 2 (stating that the trust agreement, trademark assignments, and license agreement are incorporated in it).) Among the covenants Sunstar made in those agreements was to: (1) "keep each of the [licensed marks] in continuous use"; (2) refrain from "do[ing] . . . any act . . . which will or may infringe, impair or lessen the value" of the trademarks, (3) stop using the licensed marks upon receiving a notice of suspension from the Trustee; and (4) refrain from exporting Sunstar's Alberto products outside of Japan. (JX 2, Trust Agreement ¶ 3; JX 1, Basic Sale Agreement § 7; JX 3, License Agreement §§ IV, V.) The fourth covenant was not at issue in this case. But by rendering a verdict in favor of Alberto on its contract claim, the jury necessarily found

that Sunstar had failed to perform one or more of the first three obligations. (*See* Jury Instructions at 22.)

As Sunstar points out, the jury was not asked to identify specifically the nature of the breach or breaches it had committed. But by deciding for Alberto on Sunstar's declaratory judgment claim, the jury had to have found that Sunstar breached its obligation to refrain from doing anything that "will or may infringe, impair or lessen the value" of the licensed marks. (*Id.* at 20 (instructing the jury that Sunstar had to prove that its "use in Japan of the 1999 VO5 Logo did not violate Section IV of the License Agreement" to prevail on its claim); JX 3, License Agreement § IV (stating that Sunstar "shall not at any time do . . . any act or deed which will or may infringe, impair or lessen the value" of the licensed marks).) It is not clear, however, whether the jury found that Sunstar also breached its obligations to keep the licensed marks in continuous use and/or to stop using the marks after receiving a suspension notice from the Trustee.

The lack of those findings does not, however, doom Alberto's requests for equitable relief. Equitable relief is imposed by the Court not the jury. *See Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 844 (7th Cir. 1978). Moreover, in deciding whether equitable relief is appropriate the Court can make its own factual findings as long as they are "not inconsistent with the jury verdict." *Id.; see Monroe v. United Air Lines, Inc.*, Nos. 79 C 360 & 79 C 1572, 1983 WL 432, at *1 (N.D. Ill. Jan. 12, 1983) (same).

The undisputed testimony of Sunstar's own witnesses establishes that Sunstar breached its obligation to stop using the marks after receiving a suspension notice from the Trustee. Mr. Makiyama testified that Sunstar received a suspension notice from the Bank on June 28, 1999 but continued to use both the 1999 Mark and the licensed marks thereafter. (Trial Tr. at 503-05.) In

fact, Mr. Makiyama said Sunstar did not think it was required to stop using the marks after "just receiv[ing] one letter saying that the license was suspended." (*Id.* at 524.)

Sunstar's witnesses also settled the continuous use issue. The certifications of use that Sunstar sent to the Bank were signed by Mr. Kaneda and forwarded to the Bank by Mr. Masuda. Each man testified that he did not know whether the certifications were accurate. (*See id.* at 217-226, 929-40, 945.) Mr. Makiyama, however, admitted that Sunstar's 1997 certification that it had made continuous use of the licensed trademarks was false. (*Id.* at 634-36.)

In short, the jury's verdicts and the undisputed testimony of Sunstar's witnesses establish that: (1) Sunstar's use of the 1999 Mark "will or may infringe, impair or lessen the value" of the licensed marks; (2) Sunstar failed to keep each of the licensed marks in continuous use; and (3) Sunstar continued to use the licensed marks even after it had received a suspension notice from the Trustee. In other words, the record establishes that Sunstar violated three of the principal covenants it made in the basic sale, trust and license agreements. Each of those breaches is material, warranting a termination of the license agreement. *See Jespersen v. Minn. Mining & Mfg. Co.*, 700 N.E.2d 1014, 1016 (Ill. 1998) ("*[A]ny* contract is terminable upon the occurrence of a material breach."); *Mayfair Constr. Co. v. Waveland Assocs. Phase I Ltd. P'ship*, 619 N.E.2d 144, 154 (Ill. App. Ct. 1993) (defining material breach "as a failure to do an important or substantial undertaking set forth in a contract").

Even if the license agreement is terminated, Sunstar says the trust should still be preserved because that agreement incorporates promises by both parties not to export their products into the other's territory. In Sunstar's view, those promises are still valuable and justify maintaining the trust. The export restrictions, however, prohibit Sunstar from exporting any "products bearing any

9

of the [Licensed ]Trademarks" out of Japan and Alberto from exporting such products into Japan. (JX 1, Basic Sale Agreement § 7.1-.2.) Once the license is terminated, there are no licensed trademarks and, therefore, no products bearing licensed trademarks to be exported.

Absent the license agreement, the purpose of the trust, to secure the parties' performance of the basic sale and license agreements (*see* JX 2, Trust Agreement, Preamble at 1, 3), is impossible to accomplish. Thus, the trust must be terminated as well. *See Harris Trust*, 61 N.E.2d at 873.

To effectuate the termination of the trust and license agreements, Alberto also asks the Court to order the Bank to assign all rights to the trademarks to Alberto and order Sunstar and KKKK to take the necessary action to cancel all records reflecting that they have permission to use Alberto's trademarks. Sunstar says there is no basis for the Court to enter such orders because Alberto has never made a claim for transfer of the trademarks pursuant to section three of the trust agreement.

The Court disagrees for two reasons. First, Alberto is asking the Court to fashion an equitable remedy not to enforce a section of the trust agreement. Second, even if Alberto were invoking section three, the fact that it had not pleaded such a claim would not be fatal. Section three of the trust instructs the trustee to transfer to Alberto any licensed trademark that Sunstar fails to certify has been in continuous use. (JX 2, Trust Agreement ¶ 3.) Pleaded or not, that issue was tried, and the undisputed evidence was that Sunstar's 1997 certification was false and the 2000 certification was evasive. (*See* Trial Tr. at 223-26 & 634-36 (testimony of Messrs. Masuda and Makiyama, respectively, that contrary to its 1997 certification, Sunstar had not been continuously using the licensed marks, and Sunstar omitted the continuous use language from its 2000 certification).) Thus, in accordance with Rule 15, Alberto's failure to plead a section three claim would not bar it from seeking the transfer order, even if its request were grounded in that section.

*See* Fed. R. Civ. P. 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.").

In short, the orders Alberto seeks, that the Bank assign the trademarks to Alberto and Sunstar and KKKK cancel all records that state they have permission to use Alberto's marks, are both supported by the evidence and necessary to effectuate the jury's verdicts. Alberto's requests are, therefore, granted.

Alberto's last request is for an order permanently enjoining Sunstar and KKKK from using its trademarks. The parties' first disagreement is over the law that governs Alberto's request. Alberto contends that Illinois law applies, while Sunstar says the controlling law is federal. It is not an issue the Court must decide, however, because Alberto meets the requirements under both state and federal law.

To be entitled to a permanent injunction under Illinois law, Alberto must establish that it has a clearly ascertainable right, an inadequate remedy at law, and will suffer irreparable harm if the injunction does not issue. *R.L. Polk & Co. v. Ryan*, 694 N.E.2d 1027, 1034 (Ill. App. Ct. 1998). Federal law requires Alberto to show that it succeeded on the merits of the case, it does not have an adequate remedy at law or will suffer irreparable harm if the injunction does not issue, the injury Alberto will suffer if an injunction is not issued outweighs the harm an injunction will inflict on Sunstar, and the injunction will not harm the public interest. *Cook Inc. v. Boston Sci. Corp.*, No. 01 C 9479, 2002 WL 31236289, at *2 (N.D. Ill. Oct. 1, 2002), *aff'd with modification*, 333 F.3d 737 (7th Cir. 2003).

As discussed above, Alberto prevailed in this suit and is entitled to have the trademarks returned to it. Thus, it has an ascertainable right to the licensed marks.[1] Moreover, Sunstar's unauthorized use of the 1999 Mark caused Alberto to suffer irreparable harm for which there is no adequate legal remedy, according to both trademark law and the parties' agreements. *See AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 832 (7th Cir. 2002) ("[I]rreparable harm is presumed whenever a trademark is infringed and diluted."); ( JX 1, Basic Sale Agreement § 10.4 ("The parties recognize and agree that their respective covenants and undertakings in this Agreement and the agreements being executed simultaneously herewith are of a special and unique character and that a breach will result in irreparable injury for which there is no adequate remedy at law . . . .")). The injury Alberto will suffer if the injunction does not issue, *i.e.*, Sunstar's continued infringement of Alberto's marks, far outweighs the self-inflicted injury Sunstar will suffer if the injunction is issued. *See Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979) (holding that the balance of harms favored plaintiff, the holder of trademarks for identifying electrical connectors, because defendant purposely used the same marks to designate its electrical connectors and, "[h]aving adopted its course, . . . [could] not . . . complain that having to mend its ways [would] be too expensive"); *McNeil-PPC, Inc. v. Merisant Co.*, No. 04-1090 (JAG), 2004 WL 3316380, at *26 (D.P.R. July 29, 2004) (noting that "courts generally place little weight on injuries that parties bring upon themselves through blatant misconduct"). The public interest will also be served by an

---

[1] Despite Alberto's victory on both its and Sunstar's claims, Sunstar says it has no right to an injunction because the jury did not specifically find that its use of the 1999 Mark was outside the scope of the license. As noted above, however, there is an abundance of evidence that the 1999 Mark infringed the license marks. And, even if it did not, the record unequivocally supports the finding that Sunstar infringed by using the 1999 Mark after the trustee suspended the license. Thus, whether the 1999 Mark was within or outside the scope of the license is not dispositive.

12

injunction because protecting Alberto's trademarks will prevent consumer confusion. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000).

Even if some injunction is entered, Sunstar argues that it should not be enjoined from using the global logo because the record establishes that the global logo was the subject of a separate license agreement memorialized in a 1993 letter.[2] In relevant part, that letter states:

> In our meeting in Vancouver, I mentioned to you that Alberto-Culver had recently undertaken an important exercise to modernize and vitalize our VO5 trademark logotype. This exercise has now been completed and we have issued a Guidelines and Specifications Manual to all of our Units worldwide, of which I attach a copy.
> 
> . . . .
> 
> Mr. Lavin and I wish to make it clear that Sunstar is free to choose whether you wish to adopt the same modification to your own use of the "old style" VO5 logotype for your packs in Japan. We feel that on balance it would be beneficial for you to do so, so that the advantage of being associated with a major worldwide logotype is maintained.
> 
> We would appreciate hearing from you in due course of the policy you plan to adopt in this respect.

(PX 10, Letter to Ogura from Lloyd of 7/20/93.) This letter, which does not discuss consideration, limitations on use, duration, or any other terms common to license agreements, does not appear to be an offer by Alberto to license the global logo to Sunstar. Rather, it appears to be Alberto's written permission for Sunstar to use the global logo, as contemplated by the basic sale agreement. (*See* JX 1, Basic Sale Agreement § 9.3 (prohibiting Sunstar from using or registering "any new trademarks

---

[2]Sunstar does not argue that the 1993 letter constitutes a modification of the license agreement. But, even if it had, that argument would have been unpersuasive as the agreement explicitly states that it "cannot be modified, changed or discharged in any manner except by a written instrument duly executed by the parties with the same formality as this Agreement . . . ." (JX 3, License Agreement § XII.)

13

containing the names Alberto, Alberto VO5 or VO5 or any of the [licensed marks], or any variation of [them], . . . except with the written consent of Alberto").)

Moreover, even if the letter were an offer to enter into a license agreement, the record establishes that it either lapsed or was rejected. Mr. Makiyama testified that Sunstar did not use the global logo until 1997. (Trial Tr. at 422-24.) Thus, Alberto's offer either lapsed between 1993 and 1997 or Sunstar implicitly rejected it during that period by refusing to use the global logo. *See* Restatement (Second) of Contracts § 41 ("An offeree's power of acceptance is terminated at the time specified in the offer, or, if no time is specified, at the end of a reasonable time."); *id.* § 38 ("A manifestation of intention not to accept an offer is a rejection unless the offeree manifests an intention to take it under further advisement."). In either case, even if the July 1993 letter constituted an offer, it was not one Sunstar accepted.

Sunstar also argues that injunctive relief is inappropriate because there is no evidence to suggest that Sunstar will infringe Alberto's marks in the future. Again, the Court disagrees. "[P]ast wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974), and this record is replete with evidence of Sunstar's past wrongs. (*See, e.g.*, Trial Tr. at 391, 470-71, 494-99, 628-30, 634-36 (testimony of Mr. Makiyama that Sunstar: (1) used a mark in 1989 that was outside the scope of the license and received a suspension notice from the Bank as a result; (2) was told by both Alberto and the Bank not to use the 1999 Mark, but did so anyway; (2) ignored the suspension notice it received from the Bank in 1999; and (3) falsely certified that it had continuously used the licensed marks); *id.* at 244-45 (testimony of Mr. Masuda that Sunstar did not pay any attention to the license agreement); JX 6, Letter to Prendiville from H. Kaneda of 5/11/99 (admitting that the 1999 mark "creates the same

14

commercial impression overall" as the licensed marks)). Sunstar's demonstrated disdain for others' trademark rights, coupled with Mr. Makiyama's testimony that VO5 is Sunstar's primary brand of hair care products and accounts for annual sales of between 3 and 6 billion yen annually (Trial Tr. at 379, 610-12), demonstrates a real threat of future harm sufficient to justify injunctive relief.

Next, Sunstar argues that there is no basis for enjoining it from using marks that may dilute the licensed marks because the parties' agreement does not prohibit dilution. The agreement does not use the word dilution, but it prohibits Sunstar from taking any action that "will or may ... impair or lessen the value" of the licensed trademarks (JX 3, License Agreement § IV), the essence of dilution. *See Eli Lilly & Co.*, 233 F.3d at 466 (stating that dilution is "the erosion of the distinctiveness and prestige of a trademark caused by a proliferation of borrowings, that while not degrading the original seller's mark, are so numerous as to deprive the mark of its distinctiveness and hence impact." (quotation and alteration omitted)).

Finally, Sunstar argues that Alberto's request for injunctive relief is barred by laches. Laches is an affirmative defense, *see* Fed. R. Civ. P. 8(c), that Sunstar never pleaded or proved. (*See* Sunstar's Answer Second Am. Compl.) Any laches defense is, therefore, waived. *See Tornello v. Deligiannis Bros.*, 180 F.2d 553, 556 (7th Cir. 1950) (stating that laches "is an affirmative defense [that] must be pleaded. . . . [or] is waived" (citations omitted)).

## Conclusion

For the reasons set forth above, Sunstar's Rule 50(b) motion for judgment as a matter of law and Rule 59 motion for a new trial [doc. nos. 419 & 421] are denied, and Alberto's motion for equitable relief [doc. no. 423] is granted. The parties are ordered to submit an agreed order for equitable relief within fourteen days of the date of this Memorandum Opinion and Order. If, after concerted, good faith efforts, the parties are unable to agree, each party must submit the language it proposes within the same period.

**SO ORDERED.**        **ENTERED:**     **AUG 2 2 2007**

HON. RONALD A. GUZMAN
United States District Judge